Argued and submitted April 28, affirmed August 9, reconsideration denied
September 29, petition for review denied December 12, 1989 (308 Or 608)

CARR,
*Appellant,*

*v.*

U S WEST DIRECT COMPANY et al,
*Respondents.*

(A8703-01982; CA A49675)

779 P2d 154

Richard C. Busse, Portland, argued the cause for appellant. With him on the briefs was Donald B. Potter, Portland.

Susan M. Hammer, Portland, argued the cause for respondent U S West Direct Company. With her on the brief were Charles F. Adams and Stoel Rives Boley Jones & Grey, Portland.

No appearance for respondent Jeff Pickthorn.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals a judgment dismissing her claim entitled "invasion of privacy" against defendants U S West Direct Company (U S West) and Pickthorn and granting summary judgment to U S West on her claims of intentional infliction of emotional distress, assault, battery and negligence. We affirm.

We summarize the evidence on summary judgment in the light most favorable to plaintiff. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978).[1] Plaintiff worked as an outside sales representative for U S West. At the relevant time, Pickthorn was her supervisor. As a part of her job, plaintiff called on businesses to solicit ads. It was common for supervisors to accompany sales people, and on June 20, 1986, plaintiff invited Pickthorn to join her for her appointments. In the course of that day, Pickthorn sexually harassed, assaulted and, finally, raped plaintiff. He continued to harass her sexually in the office after that time. She did not report the incidents until September, 1986, because she believed that the company had a *de facto* policy to ignore male supervisors' harassment of female employes, and she feared reprisal or the loss of her job.

The record on summary judgment shows that, in October, 1983, plaintiff had been sexually harassed by another manager and that approximately six weeks later she had reported that incident to fellow workers. They suggested that she contact the union, which she or someone else did. The company acted on the union's complaint the following October.

Plaintiff testified in her deposition that she and other women are of the opinion that it is difficult to have anything done by U S West about sexual harassment. She testified further that, during her time with the company, she has heard the remark, "What goes on the road stays on the road," from managers and sales people alike, and that she believes, based only on what she has heard from other workers, that it reflects a corporate policy that U S West will not concern itself with sexual harassment of female employes. The evidence shows

---

[1] We disregard evidence not admissible on a summary judgment motion. ORCP 47D.

that Pickthorn and U S West's Director of Human Resources were familiar with that expression.

Evidence also shows that U S West had an official policy that sexual harassment and discrimination would not be tolerated, that it conducted regular training for its employes and supervisors concerning harassment and that Pickthorn had participated in that training. Early in 1985, U S West learned of alleged sexual harassment by Pickthorn while managing a telephone sales group. After investigation, the company found that he had engaged in inappropriate sexual "horseplay." U S West disciplined Pickthorn by denying him a bonus, not permitting him to attend a high achiever's holiday, transferring him laterally to an outside sales office, placing him on one-year probation, beginning March, 1985, and warning him that further complaints could result in his discharge.

During the probationary period, Pickthorn was under the supervision of Doyle, who had frequent contacts with him and spoke with his sales crew and other managers to assure that his conduct was professional. There were no reports of inappropriate behavior. Plaintiff asked to be on Pickthorn's crew, and she worked for him from August, 1985, to June, 1986, without incident. She reported to Doyle that Pickthorn was an excellent manager. She testified in deposition that U S West could have had no knowledge that Pickthorn was dangerous or that he would rape her or any other employe. In a later affidavit, she stated that she believed that U S West knew that Pickthorn had a violent temper and was intimidating. Plaintiff's September, 1986, report of harassment and rape was the first report of misconduct that U S West had received regarding Pickthorn since he began probation. Her charges were investigated, and Pickthorn was fired.

Plaintiff's first complaint contained a claim entitled "invasion of privacy" against both defendants. The trial court struck it on the theory that it did not state a claim. Plaintiff's amended complaint contains three claims entitled "intentional infliction of emotional distress." The first, against Pickthorn and U S West, is based solely on Pickthorn's conduct, and plaintiff alleges that U S West is liable on a theory of *respondeat superior*. The second claim alleges that U S West is directly liable, because it has a *de facto* policy of ignoring

sexual harassment of women. The third claim alleges that U S West is directly liable, because it had a *de facto* policy to overlook harassment and nevertheless transferred Pickthorn to a location where it would be easy for him to engage in sexual harassment. Plaintiff also pleaded claims for assault and battery against both Pickthorn and U S West, again asserting that U S West's liability arises on a theory of *respondeat superior.* The sixth claim, against U S West directly, is for negligence. The trial court granted summary judgment for U S West on each claim, either on the theory that it is exempt from tort liability pursuant to ORS 656.018[2] or that there is no factual basis for direct liability.

■ The first question is whether, under the workers' compensation law, U S West is exempt from liability on any of the claims. ORS 656.018(1) makes the provisions of ORS chapter 656 exclusive with respect to liability arising out of a *compensable* injury. In determining whether the injury is compensable, we examine the relationship between the injury and the employment: Was the "work connection" sufficient?[3]

---

[2] ORS 656.018 provides:

"(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in ORS 656.001 to 656.794.

"* * * * *

"(2) The rights given to a subject worker and the beneficiaries of the subject worker for compensable injuries under ORS 656.001 to 656.794 are in lieu of any remedies they might otherwise have for such injuries against the worker's employer under ORS 654.305 to 654.335 or other laws, common law or statute, except to the extent the worker is expressly given the right under ORS 656.001 to 656.794 to bring suit against the employer of the worker for an injury.

"(3) The exemption from liability given an employer under this section is also extended to the employer's insurer, the department, and the employes, officers and directors of the employer, the employer's insurer and the department except that the exemption from liability shall not apply:

"(a) Where the injury is proximately caused by wilful and unprovoked aggression by the person otherwise exempt under this subsection[.]"

[3] In this context, the question of compensability is not a "matter concerning a claim" over which the Workers' Compensation Board has exclusive jurisdiction. ORS 656.704. Additionally, in view of the undisputed evidence, we can decide the question as a matter of law.

Employer contends that plaintiff has raised the question of compensability for the first time on appeal. We conclude, however, that employer raised the issue at trial when it asserted that ORS 656.018 applies.

*Rogers v. SAIF,* 289 Or 633, 616 P2d 485 (1980).

The first significant fact is that claimant was injured in the course of her employment, *i.e.,* during the time, at the place and in the circumstances of employment. She was performing her job when she was assaulted. This factor weighs in favor of compensability; however, it is not by itself determinative. Also relevant is the question of "causation," *i.e.,* whether the injury "arose out of" the employment. Here the connection to the work is weak. The source of the injury bears little or no relationship to the employment. There is no evidence that the assaults were provoked by anything related to the work. *See Youngren v. Weyerhaeuser Co.,* 41 Or App 333, 597 P2d 1302, *rev den* 288 Or 81 (1979). There is no evidence that the nature of the job or the job environment created or enhanced the risk of assault. The fact that the employment placed plaintiff and Pickthorn together is not, in itself, enough.[4] *See City of Richmond v. Braxton,* 230 Va 161, 335 SE2d 259 (1985). An employer is not subject to the workers' compensation law for all injuries to an employe irrespective of the cause merely because the employe is injured while working at the place of employment. There must be some causal link between the occurrence of the injury and a risk connected with the employment. *Phil A. Livesley Co. v. Russ,* 296 Or 25, 672 P2d 337 (1983). That link has not been established here, and we conclude, therefore, that the evidence on summary judgment does not compel the conclusion that the occurrence was covered by the workers' compensation law.[5] U S West is therefore not entitled to summary judgment on the ground that it is exempt from liability pursuant to ORS 656.018.

Contrary to defendant's contention, *Palmer v. Bi-Mart,* 92 Or App 470, 758 P2d 888 (1988), does not require a different result. We held that the Workers' Compensation Act does not operate to the exclusion of the statutory discrimination law, ORS 659.121. We also held that the fact that the plaintiff had an accepted workers' compensation claim for injuries arising out of sexual harassment did not prevent her

---

[4] If we had held otherwise on the negligence claim, *see* 98 Or App at 37 (1989), there might be an argument that U S West's negligence created an increased risk.

[5] Contrary to U S West's contention in its brief, whether plaintiff suffered from the *type* of injury for which compensation may be awarded is not determinative of whether the particular injury is compensable.

from bringing a statutory discrimination claim and a common law claim for intentional infliction of emotional distress against her employer and supervisor. Because the compensation claim had been accepted, we assumed, for the purpose of our analysis, that it was compensable. We did not decide whether, under the circumstances of that case, the claim was, in fact, compensable. The issue was not before us.

■ We next consider whether, as a matter of law, U S West could be vicariously liable for the injuries sustained by plaintiff. In order for an employer to be vicariously liable for the intentional tortious conduct of an employe, the employe causing the harm must be acting within the time and space limits of the employment and must be motivated at least partially by the purpose to serve the employer. The work must be of a kind that the employe was hired to perform. *See G. L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 757 P2d 1347 (1988). Here, the evidence on summary judgment does not indicate that Pickthorn was acting other than for personal motives. There is no indication that the employment was even remotely the cause of his conduct. The trial court correctly granted summary judgment to U S West on the claims of intentional infliction of emotional distress, assault and battery and correctly dismissed the claim of "invasion of privacy" against U S West. All of those claims were based on a theory of vicarious liability.

■ The only question remaining is whether the evidence on summary judgment creates a question of fact concerning whether U S West is directly liable on the other three tort claims. The two claims for intentional infliction of emotional distress are based on the allegations that U S West maintained a *de facto* policy of allowing sexual harassment of female employes and transferred Pickthorn to a new location even though it was aware of his tendency to take advantage of that policy. We conclude that there is no evidence to support those allegations. Plaintiff relies on the evidence that individuals who worked for U S West, including Pickthorn, were familiar with and repeated the expression "What goes on the road stays on the road" and that *plaintiff* interpreted that expression to state a policy that the company would ignore sexual harassment. What plaintiff believes is not evidence, however, that the expression, whatever it meant, was a statement of corporate policy.

■ The negligence claim alleges that U S West failed to train, control or supervise Pickthorn and that it was negligent in retaining him and in maintaining a sexually hostile workplace. Plaintiff's argument consists only of a general statement that the record supports the allegations. The evidence most favorable to plaintiff shows that, when U S West learned of Pickthorn's conduct while managing a telephone sales group in 1985, it disciplined him, transferred him to a new location and placed him on probation under the supervision of Doyle, with whom he had frequent contact. The reports that Doyle received concerning Pickthorn's conduct were positive, including a report from plaintiff that Pickthorn was an excellent manager. Plaintiff testified by deposition that U S West could not have known that Pickthorn was dangerous or that he would rape her or any other employe. The only evidence to the contrary is plaintiff's later affidavit that she believed that U S West knew that Pickthorn had a violent temper and was intimidating. That evidence does not alone create a question of fact for the jury. *See Henderson-Rubio v. May Dept. Stores,* 53 Or App 575, 632 P2d 1289 (1981).

We hold that the evidence shows, as a matter of law, that U S West's conduct did not fall below the standard of acceptable conduct and that the trial court therefore correctly granted summary judgment to U S West on the negligence claim. *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970).

With regard to the invasion of privacy claim against Pickthorn, we conclude that the trial court erred in striking it for failure to state a claim, because the allegations at least stated a claim for battery. The error was not prejudicial, however, because the allegations are identical to the allegations in the battery claim that were not stricken.[6]

Affirmed.

---

[6] In reaching our conclusion that the allegations duplicate the "battery" claim, we disregard the conclusory allegation: "Defendant's conduct unreasonably intruded into Plaintiff's private affairs or concerns, and Defendants are liable to her for invasion of privacy." *See Holden v. Pioneer Broadcasting Co., et al,* 228 Or 405, 417-18, 365 P2d 845, *cert den* 370 US 157 (1961).