Argued and submitted January 17, reversed and remanded July 31, petition for review allowed November 26, 1996 (324 Or 394)

In the Matter of the Compensation of
Perry A. Lang, Claimant.

REDMAN INDUSTRIES, INC.,
and AIG Claim Services,
*Petitioners,*

*v.*

Perry A. LANG,
*Respondent.*

(94-11757; CA A89422)

921 P2d 992

Jerald P. Keene argued the cause and filed the brief for petitioners.

David W. Hittle argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander, McCann & Smith.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Employer seeks review of an order of the Workers' Compensation Board (Board) holding that claimant suffered a compensable injury when he was struck by a coworker who was angered by claimant's derogatory racial remarks. ORS 656.005(7)(a). We reverse.

We take the facts as found by the administrative law judge (ALJ), which were adopted by the Board and are supported by substantial evidence. ORS 183.482(8)(c). Claimant, a Caucasian male, worked at employer's plant with Frazier, an African-American, male coworker. Claimant installed windows on manufactured homes, and Frazier installed doors. On August 3 or 4, 1994, claimant jokingly called Frazier a "watermelon," which angered Frazier. On August 4, referring to that or a similar remark, Frazier told claimant "don't be playing with me like that." The next morning, claimant referred to Frazier as "watermelon" and, less than an hour later, as "buckwheat," "Kentucky Fried Chicken," and "watermelon eatin' fool." Although Frazier knew claimant was trying to joke with him, Frazier became angry and called claimant "cracker" and another name, possibly "honkey."

Frazier remained very upset by claimant's remarks. Within a few minutes, another worker called Frazier a Spanish name that Frazier believed was a racial slur. Frazier struck that worker. Moments later Frazier saw claimant talking with an inspector. Assuming he would lose his job for striking the other employee, Frazier struck claimant at least twice. Frazier asked claimant, "Who's a Toby now?"

Claimant received emergency medical treatment and filed a workers' compensation claim, which employer denied. Claimant requested a hearing, and the ALJ ruled that claimant's injury "arose out of" his employment and was compensable. The Board adopted and affirmed the ALJ's order. The central issue on review is whether claimant's injury "arose out of" his employment.

■ Claimant has the burden of proving his injury is compensable. ORS 656.266.

"A 'compensable injury' is an accidental injury * * * *arising out of and in the course of employment* requiring medical services or resulting in disability or death[.]" ORS 656.005(7)(a) (emphasis supplied).

In determining whether an injury is compensable under ORS 656.005(7)(a), the Oregon Supreme Court has adopted a "unitary approach," in which "arising out of" and "in the course of" are two elements of a single inquiry, *i.e.*, "whether the relationship between the injury and the employment is sufficient that the injury should be compensable." *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994), *citing Rogers v. SAIF*, 289 Or 633, 616 P2d 485 (1980). However, both elements of ORS 656.005(7)(a) still must be satisfied to some degree. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 531, 919 P2d 465 (1996).

■　" '[I]n the course of employment' concerns the time, place, and circumstances of the injury." *Norpac*, 318 Or at 366, *citing Clark v. U.S. Plywood*, 288 Or 255, 260, 605 P2d 265 (1980). Employer concedes that claimant's injury occurred "in the course of employment" because it happened on employer's premises, during work hours and on paid time. We accept that concession, and confine our analysis to whether the injury "arose out of" claimant's employment.

■　An injury "arises out of employment" when there is a causal connection between the injury and the employment. *Norpac*, 318 Or at 368.

"An employer * * * is not liable for any and all injuries to its employes irrespective of their cause, and the fact that an employe is injured on the premises during working hours does not of itself establish a compensable injury. The employe must show a causal link between the occurrence of the injury and *a risk connected with his or her employment*." *Phil A. Lively Co. v. Russ*, 296 Or 25, 29, 672 P2d 337 (1983). (Emphasis supplied.)

Under the risk factor, we must determine "whether the injury had its origin in a risk connected with the employment[.]" 296 Or at 32. The question here is whether the risk of being assaulted by a coworker for using racially derogatory remarks is sufficiently connected with claimant's employment. For the following reasons, we hold that it is not.

In *Barkley v. Corrections Div.*, 111 Or App 48, 825 P2d 291 (1992), the plaintiff employee,[1] a convenience store cashier working alone at night, was sexually assaulted by a prison inmate on leave. *Id.* at 50. We held that the plaintiff's injury arose out of her employment under ORS 656.005(7)(a) because there "was a sufficient relationship between the assault and a risk connected with plaintiff's employment[.]" *Id.* at 53.

> "Plaintiff's position as a cashier subjected her to unavoidable and indiscriminate contact with the general public. Behavior of store customers was a hazard of her employment. Her work environment increased her exposure to people who might commit violent crimes, and especially to those who have a history of attacking convenience store clerks." *Id.* at 52-53.

In *Carr v. U.S. West Direct Co.*, 98 Or App 30, 779 P2d 154, *rev den* 308 Or 608 (1989), we held that injuries suffered by an employee plaintiff[2] who was sexually harassed, assaulted and eventually raped by her supervisor did not arise out of her employment, because there was nothing about the nature of her job, or her job environment, that "created or enhanced" the risk of assault. Moreover, the attack was not provoked by anything related to her employment. *Id.* at 32, 35.

Here, as in *Carr*, and unlike *Barkley*, there was nothing about the nature of claimant's job as a window-installer that "created or enhanced" the risk of assault by a coworker. Furthermore, although an injury may arise out of employment when it stems from a work-related dispute, *Youngren v. Weyerhaeuser*, 41 Or App 333, 597 P2d 1302 (1979), the dispute here was not work-related.

---

[1] Although *Barkley* was a civil action, we were nonetheless required to determine whether the plaintiff's injury was compensable under the Workers' Compensation Act, ORS 656.005(7)(a), and therefore whether her action was barred by ORS 30.265(3)(a). 111 Or App at 51.

[2] As in *Barkley*, we were required in *Carr* to determine whether plaintiff's injury was compensable under ORS 656.005(7)(a), and therefore whether her civil action was barred by ORS 656.018. 98 Or App at 34.

In *Youngren*, the claimant's coworker boarded up a work exit, making the claimant's job more difficult, and seemed prepared to use physical violence if claimant tried to remove the barrier. 41 Or App at 336. In lieu of striking his coworker, the frustrated claimant struck a metal drum several times, breaking a bone in his hand. *Id*. at 335. In holding the injury compensable, we agreed with the Board, which stated:

> " '[T]he fact that claimant's employment required him to work with this co-employee and that such employment * * * [might give] rise to circumstances * * * result[ing] in a dispute between claimant and his co-employee *over a work-related matter* occurring on the employer's premises would satisfy the test that the injury 'arose out of' the claimant's employment.' " *Id*. at 336 (emphasis supplied).

*See also SAIF v. Barajas*, 107 Or App 73, 76-77, 810 P2d 1316 (1991) (implying that injury from coworker stabbing arose out of claimant's employment where dispute stemmed from assailant's distress over demotion and the fact that he was no longer claimant's supervisor).

■ Although day-to-day friction may provide the causal connection between a claimant's employment and a coworker's assault, disputes resulting from that friction must arise from a *work-related* matter.[3] In *Youngren*, the quarrel was based on the claimant's use of a work exit and in *Barajas* it centered on the assailant's recent demotion. Here, the dispute arose from claimant's use of racially derogatory remarks in an attempt to "joke" with a coworker. The resulting assault was therefore not "work-related" but pertained instead to claimant's personal relationship with that coworker. *See Robinson v. Felts*, 23 Or App 126, 133, 541 P2d 506 (1975) (on-the-job assault of employee stemming from her personal relationship with attacker was not connected with her

---

[3] Claimant nonetheless urges us to hold an injury compensable where the injured worker and the assailant coworker are brought together solely through their employment, "even if the subject of the dispute is unrelated to the work." However, "[t]he fact that the employment placed plaintiff and [her assailant] together is not, in itself, enough" to establish a work connection. *Carr*, 98 Or App at 35.

employment). Claimant's injuries therefore did not "arise out of" his employment.[4]

Reversed and remanded.

---

[4] In holding otherwise, the Board erroneously relied on *McLeod v. Tecorp International, Ltd.*, 318 Or 208, 865 P2d 1283 (1993). The Supreme Court there construed the term "arising out of * * * employment" as used in an insurance policy. Responding to our conclusion that "the independent actions of an individual coworker * * * *do* not necessarily 'arise' out of employment," the Supreme Court stated "[t]hat may be true as concerns the individual coworker, but as to the victimized employee, the injury arises out of the employment." *Id.* at 217 n 6. However, the court specifically rejected the notion that that language had the same meaning as in ORS 656.005(7)(a). *McLeod* therefore does not apply.