Argued and submitted March 5, decision of the Court of Appeals reversed; order of the Workers' Compensation Board affirmed August 21, 1997

In the Matter of the Compensation of
Perry A. Lang, Claimant.

REDMAN INDUSTRIES, INC.,
and AIG Claim Services,
*Respondents on Review,*

*v.*

Perry A. LANG,
*Petitioner on Review.*

(WCB 94-11757; CA A89422; SC S43586)

943 P2d 208

David W. Hittle, of Burt, Swanson, Lathen, Alexander, McCann & Smith, Salem, argued the cause and filed the petition on behalf of petitioner on review.

Jerald P. Keene, of Roberts, Reinisch, Mackenzie, Healey & Wilson, P.C., Portland, argued the cause and filed a response on behalf of respondents on review.

KULONGOSKI, J.

## KULONGOSKI, J.

The issue in this workers' compensation case is whether a claimant's injury is compensable when the injury was caused by an assault by a coworker at the workplace. We hold that claimant's injury is compensable.

We take the following undisputed facts from the Court of Appeals' opinion.

"Claimant, a Caucasian male, worked at employer's plant with [assailant], an African-American, male co-worker. Claimant installed windows on manufactured homes, and [assailant] installed doors. On August 3 or 4, 1994, claimant jokingly called [assailant] a 'watermelon,' which angered [assailant]. On August 4, referring to that or a similar remark, [assailant] told claimant 'don't be playing with me like that.' The next morning, claimant referred to [assailant] as 'watermelon' and, less than an hour later, as 'buckwheat,' 'Kentucky Fried Chicken,' and 'watermelon eatin' fool.' Although [assailant] knew claimant was trying to joke with him, [assailant] became angry and called claimant 'cracker' and another name, possibly 'honkey.'

"[Assailant] remained very upset by claimant's remarks. Within a few minutes, another worker called [assailant] a Spanish name that [assailant] believed was a racial slur. [Assailant] struck that worker. Moments later [assailant] saw claimant talking with an inspector. Assuming he would lose his job for striking the other employee, [assailant] struck claimant at least twice. [Assailant] asked claimant, 'Who's a Toby now?'" *Redman Industries, Inc. v. Lang*, 142 Or App 404, 406, 921 P2d 992 (1996).

Claimant received medical treatment and filed a workers' compensation claim. Employer denied that claim. An administrative law judge (ALJ) ruled that claimant's injury was compensable. The ALJ found that claimant's injuries arose out of and in the course of claimant's employment and that claimant was not an active participant in the assault. The Workers' Compensation Board (Board) adopted and affirmed the ALJ's order. On employer's petition for judicial review, the Court of Appeals reversed, concluding that

claimant's injury did not "arise out of" his employment. *Redman Industries*, 142 Or App at 410. For the reasons that follow, we reverse the decision of the Court of Appeals.

■  For an injury to be compensable under the Oregon workers' compensation law, it must "aris[e] out of and in the course of employment." ORS 656.005(7)(a). The phrases "arise out of" and "in the course of" are two elements of a single inquiry into whether an injury is work-related. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997). This is called the "work-connection" test. *Id.* at 596. Under that test, both elements must be satisfied to some degree. *Id.* at 596. However, the two elements need not be met to the same degree. When the factors supporting one element are many, the factors supporting the other may be minimal. *Ibid.* In this case, it is undisputed that claimant's injury occurred "in the course of" his employment. The question, therefore, is whether the injury "arose out of employment" and, if so, whether there is any other statutory bar to compensation.

■ ■  We start with the phrase "arising out of" in ORS 656.005(7)(a). In interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (explaining methodology). In attempting to discern legislative intent, the first level of analysis is to examine the text and context of the statute. *Ibid.* Text and context include prior case law from this court interpreting the same statutory terms. *See State v. King*, 316 Or 437, 446, 852 P2d 190 (1993) (explaining proposition). Context also includes other related statutes. *PGE*, 317 Or at 611. If the legislature's intent is clear from text and context, further inquiry is unnecessary. *Ibid.*

■  In prior cases interpreting ORS 656.005(7)(a), this court has held that the inquiry into whether an injury "arises out of employment" tests the causal connection between the injury and the employment. *Fred Meyer*, 325 Or at 596; *Norpac Foods v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994); *Clark v. U.S. Plywood*, 288 Or 255, 260, 605 P2d 265 (1980). A causal connection requires more than a mere showing that the injury occurred at the workplace and during working hours. *Norpac Foods*, 318 Or at 368; *Phil A. Livesley*

*Co. v. Russ*, 296 Or 25, 29, 672 P2d 337 (1983). A causal connection must be linked to a risk connected with the nature of the work or a risk to which the work environment exposed claimant. *Fred Meyer*, 325 Or at 601.

In some jurisdictions, courts have required not only that an injury be linked to a risk connected with employment, but also that the risk be "peculiar to the employment" or that the employment "increase[ ] the risk of injury." *See, e.g., Sacks v. Industrial Commission*, 13 Ariz App 83, 474 P2d 442 (1970). However, this court has "rejected 'the largely obsolete "peculiar-risk" and "increased-risk" considerations' in assessing whether a worker's injury was linked to a risk connected with employment." *Fred Meyer*, 325 Or at 601 (quoting *Livesley*, 296 Or at 31).

■ In this case, the Court of Appeals formulated the test as being whether claimant's specific employment tasks " 'created or enhanced' the risk of assault by a coworker." *Redman*, 142 Or App at 408. In our view, that test, at least in part, simply reformulates the "peculiar-risk"/"increased-risk" inquiry rejected by this court in *Livesley* and *Fred Meyer*, and we reject it for that reason. Therefore, we are left to apply the proper test to the circumstances of this case: namely, whether the risk of claimant's injury either resulted from the nature of his work or whether the work environment exposed him to the risk of his injury.

In discussing "risks," this court in *Livesley* quoted with approval the following from 1 *Larson's Workers' Compensation Law* § 7.00 at 3-14 (rebound ed 1997):

> "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks—i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance." *Livesley*, 296 Or at 29-30.

In *Livesley*, this court then determined that unexplained injuries are a classic example of neutral risks. The court listed, as an example of such a neutral risk, an assault against an employee on the job by an unknown person, when the motive for the assault is unknown but may have been either personal or employment-related.[1] 296 Or at 30 n 6.

In this case, however, both the identity of the assailant and the motive for the assault are known. The assailant was a coworker. The motive for the assault was the assailant's anger over being called racially derogatory names, combined with the assailant's belief that he would be fired for having assaulted another coworker moments earlier and, therefore, that he had nothing to lose by assaulting complainant. Because both the identity and the motive are known, the assault does not fall into the category of neutral risks. Instead, the question is whether an assault under the above-mentioned circumstances constitutes either a risk "associated with the employment,"[2] which would be compensable, or a risk "personal to the claimant," which would not be compensable.

That specific question still is one of legislative intent. This court has not considered whether the legislature intended to treat an assault by a coworker on a claimant/employee as one associated with employment or one personal to the claimant. The text of ORS 656.005(7)(a) does not provide an answer. However, ORS 656.005(7)(b)(A) provides context for the inquiry. That statute is an express statutory exclusion to what is compensable under ORS 656.005(7)(a). ORS 656.005(7)(b)(A) provides:

> " 'Compensable injury' does not include * * * [i]njury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties[.]"

---

[1] This court also noted that other examples of neutral risks would include an employee being hit by a stray bullet, bitten by a dog, struck by lightning, or injured by debris from a distant explosion. *Phil A. Livesley Co. v. Russ*, 296 Or 25, 30 n 6, 672 P2d 337 (1983).

[2] In *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997), we defined a risk "associated with the employment" to mean a risk "resulting from the nature of [the] work" or a risk to "which the work environment exposes the worker."

By its terms, that statute excludes from compensability injuries from assaults (1) to an active participant in the assault *and* (2) when the assault is not connected to the job assignment and amounts to a deviation from customary duties. Unless both of those elements are met, the exclusion does not apply. Because the statute excludes only a subset of the types of injuries from assault that will not be deemed compensable, a logical inference is that the legislature intended other types of injuries from assault to be deemed compensable, so long as they arose out of and in the course of employment.

The parties agree that an injury caused by an assault in the workplace by a coworker is compensable if the assault grew out of a quarrel whose subject matter is related *directly* to work. We also agree that the legislature intended such injuries to be compensable. However, the parties disagree concerning whether the same assault is compensable if it grew out of a quarrel whose subject matter is not related *directly* to work. In this case, employer argues that the racially derogatory statements that led to the assault had no direct reference to work-related matters. On that basis, employer argues that claimant's injury did not arise out of his work. We disagree.

The normal work environment necessitates that employees work together and exposes them to each other, based solely on their employment status. Professor Larson characterizes this variously as "proximity," "friction and strain," or "positional risk" work connection. 1 *Larson's Workers' Compensation Law* §§ 11.16(a) at 3-299 and 11.16(c) at 3-309. That doctrine was popularized in the germinal case of *Hartford Acc. & Indem. Co. v. Cardillo*, 112 F2d 11, *cert den* 60 S Ct 1100, 84 L Ed 1032 (1940). There, a claimant repeatedly had been called "shorty" by a coworker. The claimant retaliated by calling the coworker a vile name and thereafter was assaulted and injured. The court concluded that the injury arose out of employment and stated:

> "This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only

some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences." 112 F2d at 17.

Since *Hartford*, numerous other jurisdictions have adopted the foregoing reasoning to various degrees. *See, e.g., Mullins v. Tanksleary*, 376 P2d 590, 592 (Okla 1962) (assault by coworker that was unrelated to employment or personal animosity "lay within that range of work-connected peril which was inseparable from the risk incidental to employment"); *Crotty v. Driver Harris Co.*, 49 NJ Super 60, 139 A2d 126 (1958) (assault by coworker was work-connected so long as the assault was not motivated by contact with the employee outside of the employment); *Nash-Kelvinator Corp. v. Industrial Commission*, 266 Wis 81, 62 NW2d 567 (1954) (assault by coworker concerning homosexuality was compensable, because the work environment was a causative factor); *see also* 1 *Larson's Workers' Compensation Law* § 11.16(a) (annotating holdings from other jurisdictions and noting that the trend is toward adopting this reasoning).

In our view, the reasoning in *Hartford* and its progeny is consistent with Oregon's test for assessing whether an injury arises out of employment. As mentioned, employer asserts, as did the Court of Appeals, that only those injuries from assaults that are directly precipitated by "work-related" factors—such as a coworker's critique of another employee's job performance—are compensable. We conclude that that focus is too narrow. An injury arises out of employment if the risk of injury results from the nature of the claimant's work or from the work environment. That test does not require that the motivation for a coworker's assault be an argument over job performance or some other work-related factor.

■    Just as the workplace exposes an employee to a myriad of risks that inhere in the physical workplace environment—such as machines and office equipment that can malfunction—the workplace also exposes employees to the risk that a coworker may lose control of his or her emotions and assault the employee. Whether the coworker's loss of control is connected to a work-related comment is not dispositive. That difference does not, *ipso facto*, distinguish those cases that can be deemed to arise out of employment from those that cannot. Employee interactions cannot be so easily isolated and compartmentalized. The most direct cause of an assault by a coworker may be a criticism of another employee's work, lack of hygiene or fashion sense. However, in any such case, the criticism may be but the last of many straws precipitating the assault. Based on the foregoing reasoning, we hold that the risk of an assault by a coworker in the workplace is a risk to which the work environment exposes an employee.

This does not mean that an injury resulting from an assault by a coworker arises out of employment *per se*. The rationale for the "proximity" test is that a workplace assault by a coworker is caused by circumstances *associated with the work environment*. When the motivation for an assault by a coworker is an event or circumstance pertaining to the assailant and the claimant that originated entirely separate from the workplace, and the only contribution made by the workplace is to provide a venue for the assault, then the rationale does not apply. Larson explains this limitation as follows:

> "When the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test." 1 *Larson's Workers' Compensation Law* § 11.21(a) at 3-314.[3]

---

[3] A New Jersey court characterized the limitation in a similar fashion:

"[A]ssaults by co-workers are compensable as long as they are not motivated by personal vengeance stemming from contact with the employee outside of the employment." *Crotty v. Driver Harris Co.*, 49 NJ Super 60, 139 A2d 126, 134 (1958).

An example would be where two employees had a romantic relationship outside of work and a workplace assault by one on the other was based on an event unique to that relationship and was not fueled, in part, by any workplace event.

Applying the foregoing analysis to this case, there is no evidence that claimant and his assailant had any relationship outside of work or that the motivation for the assault was fueled by an occurrence involving them outside of work. Rather, the undisputed motivation for the assault was the assailant's anger over being called racially derogatory names, combined with the assailant's belief that he would be fired for having assaulted another coworker moments earlier and, therefore, that he had nothing to lose by assaulting complainant, all of which occurred at the workplace. Under those circumstances, we conclude that claimant's injury arose out of his employment.[4]

█ The Board, having concluded that claimant's injury arose out of and in the course of his employment, concluded further that claimant was not an "active participant" in the assault and that compensability, therefore, was not excluded under ORS 656.005(7)(b)(A).[5] As noted above, 325 Or at 37, that statute provides that compensability does not include

"[i]njury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties[.]"

Employer argued below that claimant's derogatory racial comments angered assailant and thereby caused assailant to assault claimant. Consequently, employer argued that claimant's comments made claimant an active participant in the assault. The ALJ, however, made a contrary finding. He concluded:

---

[4] The reasonableness or offensiveness of claimant's racially derogatory comments is irrelevant to this inquiry. *See Clark v. U.S. Plywood*, 288 Or 255, 265, 605 P2d 265 (1980) (asserting that a "holding that compensability is determined by the reasonableness of the worker's conduct has no foundation in the workers' compensation statutes or in Oregon case law").

[5] The Court of Appeals did not reach that issue. Typically, in that situation, this court remands to the Court of Appeals to consider such an issue in the first instance. In this case, however, for efficiency's sake, and because the issue was decided by the Board and presented in the briefs, we decide the issue now.

"Because of the intervening time period, the intervening provocation by another employee and the assault on that employee, and because claimant neither intended nor anticipated the assault that injured him, I conclude that claimant was not an 'active participant.' He did not voluntarily assume an active or aggressive role in the assault."

The Board adopted that finding. Under the circumstances of this case, we agree that the claimant was not an active participant. The statutory provision expressly requires that a claimant be an "active participant *in* assaults or combats." (Emphasis added.) Those terms require more than that a claimant anger an assailant in such a way that the assailant later assaults the claimant. Based on the text alone, we conclude that claimant was not an active participant in the assault that injured him. Therefore, claimant's injury is compensable under ORS 656.005(7).

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.