Argued and submitted October 6, 1999, reversed and remanded for reconsideration October 18, 2000, petition for review denied February 20, 2001 (331 Or 633)

In the Matter of the Compensation of
Becky J. McTaggart, Claimant.

Becky J. McTAGGART,
*Petitioner,*

*v.*

TIME WARNER CABLE
and Travelers Insurance,
*Respondents.*

(98-01802; CA A104295)

15 P3d 1154

Holly J. Somers argued the cause and filed the brief for petitioner.

Jerald P. Keene argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

Kistler, J., concurring.

**ARMSTRONG, J.**

Claimant seeks review of a decision of the Workers' Compensation Board that upheld employer's[1] denial of her claim for injuries that she suffered when she fell on the way from her car to her work. We reverse and remand for reconsideration.

Claimant works for employer in Portland as a customer service representative.[2] At the time of her injury, she worked four days a week, from 9:00 a.m. to 8:00 p.m. When she arrived for work shortly before 9:00 a.m. on January 9, 1998, she parked on Northeast Sullivan Street, which is a public right of way that runs between the Banfield Freeway and several businesses. Neither the city nor any other entity actually owns the street, but a city ordinance requires adjacent property owners to provide some degree of maintenance. Employer provides parking for its employees, but it has insufficient spaces for all of them. It is aware that some employees park on Sullivan Street when space is available. After claimant parked there on January 9, she began walking eastward toward employer's building, where she intended to enter a door on the lower level to reach her work station.

Before it reaches employer's property, Sullivan Street begins to slope downward, with the slope ending on employer's property; the precise location of the property line is not entirely clear. The surface of the slope is asphalt. The slope leads to a parking area for employer's vehicles and to the delivery area for employer's warehouse. Employer is the primary if not sole vehicular user of the slope. Employer prevents other vehicles from parking on any part of the slope, including the portions that it does not own, in order keep it clear for its purposes. It has filled potholes on the street above the slope and has trimmed bushes on the side of the slope. Claimant fell and suffered the injuries at issue while

---

[1] Travelers Insurance Company is employer's workers' compensation insurer and therefore acted for employer in processing claimant's claim.

[2] In deciding this case, the Board adopted and affirmed the opinion and order of the administrative law judge. We therefore refer to that opinion as the opinion of the Board. Neither party challenges the Board's findings, and we therefore rely on them in describing the facts.

she was walking down the slope. She does not know the reason for her fall.[3]

■ Based on those findings, the Board concluded that claimant's injuries occurred in the course of her employment but that they did not arise from it. It therefore found that the claim is not compensable. The Supreme Court has explained in a number of cases that, in order for an injury to be compensable, it must both occur in the course of the claimant's covered employment and arise out of that employment. The requirement that the injury occur in the course of employment concerns the time, place and circumstances of the injury; the requirement that it arise out of employment requires a causal link between the injury and the employment. Although they are stated separately, those requirements are two prongs of what is in fact a single work-connection inquiry. There must be some support for each prong, but neither is dispositive. Strong support for one prong and minimal support for the other may be sufficient to satisfy the test. The basic question is whether the causal connection between the injury and the employment is sufficient to warrant compensation. ORS 656.005(7)(a); *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596-97, 943 P2d 197 (1997); *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983).

■ We begin with the "in the course of employment" prong. Employer cross-assigns error to the Board's conclusion that claimant satisfied that prong. *See* ORAP 5.57.[4] If employer were correct, we would affirm the Board without considering the "arising out of employment" prong. In its order, the Board recognized that, under the "going and coming" rule, an employee's injury that is sustained before arriving at work or after leaving it is generally not compensable. However, it analogized claimant's situation to the parking lot exception to the going and coming rule, under which an

---

[3] Depending on how the Board construed claimant's testimony, it could have found that claimant believes that she either turned her ankle or tripped over a defect in the asphalt or that she does not know what caused the fall. There is substantial evidence to support its conclusion that claimant does not know the reason.

[4] ORAP 5.57 expressly refers to cross-assigning error to decisions of a trial court, not of an administrative agency. However, so far as practicable, the procedure in administrative review cases is the same as that for civil appeals. ORAP 4.05. We therefore conclude that ORAP 5.57 applies to this case.

injury may be compensable if it occurs in a parking lot or other off-premises area over which the employer has some control. *See Fred Meyer, Inc.*, 325 Or at 597-98. As the Board explained:

> "[A]s soon as claimant started down [the] slope she, for all practical purposes, was on the employer's premises or an off-premises area over which the employer exercised almost exclusive control. The employer acquiesced in employees parking on the right of way while at work and in the employees walking down the slope to enter the employer's work place through the lower entrance doors. Although there is no evidence that this employer paved the right of way or created the speed bump/water diverter on the slope, the employer's almost exclusive control over the slope is established by the record as a whole and in particular by the following factors: the employer has limited maintenance responsibility for the slope consistent with City ordinance; the employer does not encourage public use of the slope and does not allow parking on the slope so as to maintain ingress/egress to/from the employer's parking lot and warehouse/delivery area; there is no practical reason for the public to use the slope because the slope leads to [the] parking lot and warehouse/delivery area; the slope is extensively used by the employer's vehicles and those coming to the employer's warehouse/delivery area for the employer's business purposes; the employer fixes potholes as needed at the top of the slope; the employer trims the bushes on the side of the slope on a yearly basis."

The Board therefore concluded that the "in the course of employment" prong strongly supports compensability.

■      Employer argues that claimant's injury occurred only *close* to claimant's work space, *close* to claimant's work time, and *close* to claimant's beginning her work duties, and that closeness is not sufficient to show that the injury occurred in the course of her employment.[5] It notes that the Board stated that it was "almost" as if the fall had occurred on employer's premises or parking lot and suggests that almost is not sufficient. However, in *Cope v. West American Ins. Co.*, 309 Or 232, 785 P2d 1050 (1990), the Supreme Court held that several relevant cases

---

[5] In sporting terms, closeness counts only in horseshoes.

"demonstrate that when an employee traveling to or from work sustains an injury on or near the employer's premises, there is a 'sufficient work relationship' between the injury and the employment only if the employer exercises some 'control' over the place where the injury is sustained."

*Cope*, 309 Or at 239.[6] Thus, it is possible to satisfy the "occurring in the course of employment" prong when the employer has *some* control over the area where the injury is sustained, even if the area is not a parking lot. Here, employer had essentially exclusive control of the slope where claimant fell, and we therefore agree with the Board's analysis of this prong of the unitary work-connection test.

The remaining question is whether the Board correctly concluded that claimant's injury did not arise out of her employment. Claimant must provide at least some limited evidence to satisfy that prong of the unitary work-connection test in order to prove that her injury is compensable. In its opinion, the Board treated the case as one involving an unexplained fall, which it described as a fall where the claimant is unable affirmatively to show a work-related cause for the injuries. It then relied on earlier cases in which the Board had concluded, as a matter of law, that an unexplained fall does not arise out of employment. The basis for those cases was the Board's conclusion that the legislature had overruled the Supreme Court's contrary holding in *Phil A. Livesley Co.*, in which the court held that a truly unexplained fall—one in which among other things, the claimant has eliminated all idiopathic[7] reasons for the fall—arises out the employment. This case presents our first opportunity to consider whether the Board is correct that *Phil A. Livesley Co.* is no longer controlling in this respect.

---

[6] In *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 867 P2d 1373 (1994), the Supreme Court held that we had incorrectly read *Cope* as holding that an injury in an employer-controlled parking lot is *per se* compensable without regard to whether it arose out of the employment. That holding does not affect the discussion in *Cope* of the "occurring in the course of employment" prong of the work-related test.

[7] Idiopathic reasons are those that are peculiar to the claimant rather than arising out of the work situation, such as a heart attack that occurs at work but whose cause is the claimant's pre-existing, non-work-related heart disease.

In *Phil A. Livesley Co.*, the claimant fell at work while he was walking from his work station to the time clock in order to punch out. The area where he walked was free from debris or any substance that could account for a slip or trip. The claimant testified that he did not get dizzy, experience vertigo, or lose consciousness before the fall; all that he could remember was falling. 296 Or at 27. The court first noted that the injury satisfied the "in the course of employment" prong of the test. *Id.* at 29. It then turned to the "arising out of employment" prong. It began by pointing out that an employer is not liable for any and all injuries irrespective of their cause; the fact that an employee is injured on the premises during working hours does not in itself establish a compensable injury. The employee must show a causal link between the injury and a risk associated with the employment; the court gave an attack of appendicitis or a self-inflicted injury as examples of noncompensable injuries. *Id.*

The court then considered whether there was a sufficient causal connection between the claimant's unexplained fall and his employment. It noted that an unexplained fall arises from neutral risks of employment—those that are neither peculiar to the employment nor personal to the employee. Both the Board and this court had concluded that the claimant had persuasively eliminated all idiopathic factors of causation. In our decision, we had relied on the elimination of idiopathic factors to hold that the claim arose out of the claimant's employment as a matter of law:

> "[A] sufficient work connection between the injury and the employment has been shown by the fact that the injury occurred in the course of employment, that the employment caused the employe to be at the place where he was injured at the time when he was injured, and that there is no evidence of personal contribution to the injury."

*Phil A. Livesley Co. v. Russ*, 60 Or App 292, 296, 653 P2d 274 (1982). We emphasized that in reaching that conclusion we had not shifted the burden of proof from the claimant or used an implied presumption; rather, the facts that we described meant that the injury was work related. *Id.*

The Supreme Court expressly agreed with our holding, which it summarized as being that "a truly unexplained

fall that occurs on the employer's premises, during working hours, while the employee is performing required duties is compensable if the employee can eliminate idiopathic causes." *Phil A. Livesley Co.*, 296 Or at 29-30. That express statement appears to treat the question as one of law: if the fall is truly unexplained, it arises out of a neutral risk of the employment and is compensable. However, later statements in the opinion can be read as treating the issue as one of fact, with the unexplained nature of the fall simply allowing a permissible inference that it arose out of the employment. Thus, the court stated that, when the claimant has eliminated idiopathic causes for an unexplained fall, "the inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employment exposed the employee." It then added that, because the course of employment elements were strong, personal elements were eliminated, and the arising out of employment elements were incapable of direct determination, the factfinder could find that the claimant carried his burden of proof of satisfying the unitary work-connection test for compensability. *Id.* at 32.

■■ There is thus at least a superficial ambiguity in the Supreme Court's reasoning. It both held that a truly unexplained fall that occurs in the course of employment arises out of employment as a matter of law and also appeared to suggest that the issue is actually one of an inference for the factfinder. In deciding that the legislature overruled *Phil A. Livesley Co.* when it adopted ORS 656.266, the Board focused on the second aspect of the Supreme Court's opinion and ignored the first; it treated the relationship between an unexplained fall and the claimant's work as solely one of fact. We conclude, contrary to the Board, that the court held that an unexplained fall arises out of employment as a matter of law. However, we also conclude that, even if the issue is one of fact, ORS 656.266 does not affect the court's reasoning. Thus, the Board's decision not to follow *Phil A. Livesley Co.* is without support under either approach.

We begin by discussing the case in which the Board first considered the effect of ORS 656.266 on the decision in *Phil A. Livesley Co.* concerning an unexplained fall. ORS 656.266 provides:

"The burden of proving that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker. The worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred."

In *Ruben G. Rothe*, 45 Van Natta 369 (1993), the Board concluded from the legislative history that the purpose of the statute was to overrule our decision in *Bradshaw v. SAIF*, 69 Or App 587, 687 P2d 165 (1984).[8] In *Bradshaw* we had found, on *de novo* review, that the claimant's headaches were a consequence of her compensable foot injury. The headaches began while the claimant was hospitalized for a severe infection that resulted from the injury. Neither the claimant's treating physician nor the specialists to whom he referred her were able to determine the cause of the headaches. The treating physician ultimately concluded that the injury and the headaches were related. We agreed with him, noting that "the close connection between [the] onset [of the headaches] and claimant's physical condition, combined with the inability to find any specific cause for them," made it more probable than not that the headaches were caused by the direct effects of the injury. *Bradshaw*, 69 Or App at 590.

In *Rothe*, the Board treated our opinion in *Bradshaw* as holding that the headaches were compensable solely because the claimant had ruled out other possible causes for them. It then quoted a legislator's statement that the purpose for enacting ORS 656.266 was to require the Board and the courts to base decisions on "clearly proven facts instead of deductive reasoning[.]" *Rothe*, 45 Van Natta at 371. Finally, the Board stated that the basis for the holding in *Phil A. Livesley Co.* that an unexplained fall is traceable to an unidentified risk of the employment was an inferential conclusion based on the elimination of other possible causes for the fall. That kind of reasoning, the Board believed, is exactly

---

[8] The claimant in *Rothe* did not seek judicial review, possibly because there was substantial evidence to support the Board's conclusion that he had not ruled out idiopathic causes and, thus, that his fall was not unexplained. Because of that conclusion, the discussion of ORS 656.266 was *dictum*, but the Board followed it without further elaboration in later cases.

what ORS 656.266 prohibits. As a result, according to the Board, the statute effectively overruled that aspect of *Phil A. Livesley Co. Id.* at 372. In this case, employer relies on ORS 656.266 as the Board construed it in *Rothe*. Indeed, employer expands the Board's rationale to argue that the statute requires a worker affirmatively to identify a work-related cause of the injury in order to prove compensability. That argument is based on a misunderstanding of *Phil A. Livesley Co.*

ORS 656.266 is relevant to the compensability of an unexplained fall only if such a fall is compensable solely because the elimination of idiopathic factors leads to an inference that it was work related. Contrary to employer's argument, in the case of an unexplained fall, the issue is not what caused the fall—by definition we cannot know that—but whether it arose out of a risk of the claimant's employment. The foundation of *Phil A. Livesley Co.* is the court's recognition that it is possible to determine that an unexplained fall arose out the claimant's employment without explaining the precise cause of the fall. It was not possible in that case to determine why the claimant fell, but it was clear that he fell while engaged in a work-related activity. The fall was compensable because it was the result of a neutral risk of employment. Recent Supreme Court cases reflect the court's continued insistence that an injury that arises from a neutral risk of employment arises out of the employment. Because that is the foundation for its holding in *Phil A. Livesley Co.*, those cases indicate that its conclusion was one of law, not of fact.[9]

In *Fred Meyer, Inc.*, the court held that an assault by a third person that occurred in the employer's parking lot after the claimant had finished her shift arose out of the employee's work. It rejected the employer's argument that the place where the employee parked exposed her to no greater risk than those to which the employer's customers were exposed. That argument, the court said, reflected the

---

[9] That is how we understood *Phil A. Livesley Co.* in a case that we decided shortly after the Supreme Court's decision. *See McAdams v. SAIF*, 66 Or App 415, 417, 674 P2d 80, *rev den* 296 Or 638 (1984) ("if a claimant's fall is unexplained, it is compensable, but if it is idiopathic, it is not").

largely obsolete "peculiar-risk" and "increased-risk" considerations that it had rejected in *Phil A. Livesley Co.* "Rather, a worker's injury is deemed to 'arise out of' employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker." 325 Or at 601. The court then agreed with the Board's conclusion that, by requiring the claimant to park in an unlit fringe of the parking lot, the employer had created the risk that an attack would occur. *Id.* at 601-02.[10]

In *Redman Industries, Inc. v. Lang*, 326 Or 32, 943 P2d 208 (1997), the claimant was injured when a coworker assaulted him in retaliation for racially derogatory statements that the claimant had made. In our opinion, we held that the risk of being assaulted for making racially derogatory statements was not sufficiently connected with the worker's employment for it to arise out of that employment. Nothing about the nature of the claimant's employment as a window installer, we said, created or enhanced the risk of an assault by a coworker for a non-work-related reason. *Redman Industries, Inc. v. Lang*, 142 Or App 404, 407-08, 921 P2d 992 (1996). The Supreme Court rejected our analysis. It believed that we had, at least in part, simply reformulated the discredited "peculiar-risk" or "increased-risk" test. Rather, the issue was whether the risk of injury resulted from the nature of the work or whether the work environment exposed the claimant to the rise of injury. *Redman Industries, Inc.*, 326 Or at 36. The court then reiterated its statement in *Phil A. Livesley Co.* that an injury that arises from a neutral risk of employment is compensable, pointing out that an unexplained injury is a classic example of a neutral risk.

In *Redman Industries, Inc.*, however, the injury was not unexplained, so the court examined the legislature's intent concerning assaults, concluding that it intended an injury from an assault in which the claimant was not an

---

[10] The court first quoted the Board's reasoning and then stated that it "agree[d] with the Board that claimant's injury 'arose out of' her employment." It did not state that it agreed with all of the Board's reasons for reaching that conclusion. *Id.* at 602.

active participant to be compensable. *Id.* at 36-37. Finally, the court held that an injury arises out of employment if the risk of injury results from the nature of the claimant's work or from the work environment. In *Redman Industries, Inc.*, the work environment exposed the claimant to the risk that a coworker might lose self-control and assault him. There was no evidence of off-the-job friction that led to the assault.[11] The claim, therefore, was compensable. *Id.* at 39-41.

Finally, in *Wilson v. State Farm Ins.*, 326 Or 413, 952 P2d 528 (1998), the claimant injured herself when she tore her Achilles tendon while "skip-stepping" on her way back to her desk after receiving permission to take the rest of the afternoon off. The Board denied compensation on the ground that the injury did not arise from her employment. According to the Board, skipping was not her usual means for moving around the office, and no condition associated with her work, other than happiness about being able to leave early, caused the injury. *Id.* at 417. We affirmed without opinion. *Wilson v. State Farm Ins.*, 142 Or App 205, 920 P2d 181 (1996). In reversing the Board's decision, the Supreme Court again emphasized its rejection of the "peculiar-risk" and "increased-risk" criteria and held that the injury was compensable. Moving around the office was a work-related activity, and it was irrelevant that the claimant used an unusual method of doing so.[12] The injury arose from her employment. *Id.* at 417-18.

Those cases show that the Supreme Court continues to rely on the essential holding of *Phil A. Livesley Co.*: an injury arises out of employment if it arises from a neutral risk of the employment. It is not necessary or, indeed, relevant that work somehow increased the risk of the injury. What matters, rather, is that nonemployment risks were not

_____

[11] The requirement that the assault not arise from off-the-job friction is similar to the requirement in *Phil A. Livesley Co.* that there be no idiopathic factors that caused the fall. The purpose of each requirement is to ensure that the injury truly arises from a neutral risk of the employment, not from something that is unrelated to the employment.

[12] Thus, if the claimant had been injured while using a normal method of moving around the work place, the injury would have been compensable. That conclusion, again, shows that an unexplained fall that occurs while the claimant is moving around the work place is a compensable injury.

responsible for the injury. Under those cases, one way of showing that the injury arose from a neutral risk of employment is to show that the claimant was in the course of employment at the time of the injury and that no nonemployment risk—an idiopathic condition or an off-the-job dispute with an assaultive coworker, for instance—was responsible for it. In those cases, the court has reinforced its holding in *Phil A. Livesley Co.* that a truly unexplained fall—one that is not the result of idiopathic factors—is compensable as a matter of law. Its subsequent references in *Phil A. Livesley Co.* to a permissible inference that the cause was work related can best be understood as helping to explain its adoption of that legal rule; those references do not mean that every unexplained fall case depends on what inference the finder of fact chooses to draw.

To require a claimant to show a cause for an unexplained fall is both inconsistent with the lack of explanation that is the essence of such a fall and contradicts the Supreme Court's cases. Because the issue of whether an unexplained fall arose out of the employment is one of law, and because the exclusion of other causes is simply part of showing that the claimant's fall met the legal standard of being unexplained, the prohibition in ORS 656.266 on purely deductive reasoning does not apply. The essential fact to be proved is the lack of explanation; eliminating other causes is a way of proving that fact.

Even assuming that the Supreme Court's decision in *Phil A. Livesley Co.* was based on an inference rather than a rule of law, *Rothe* is incorrect. We begin, as we must, with the words of the statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). ORS 656.266 provides that a claimant may not carry the burden of proving compensability *"merely* by disproving other possible explanations of how the injury or disease occurred." (Emphasis added.) The crucial word in this context is "merely," which for these purposes means "no more than" and has synonyms that include "barely," "only," "simply," and "solely." *Webster's Third New Int'l Dictionary*, 1413 (unabridged ed 1993). All that the legislature did was to prohibit claimants from doing *no more than* disproving other explanations. It did not prevent them from disproving other possible explanations as

part of carrying their burden of proof; thus, a claimant may still exclude alternative explanations to assist in proving the claim. *See Bronco Cleaners v. Velazquez*, 141 Or App 295, 298-300, 917 P2d 539 (1996) (dermatologist's evaluation of relationship between claimant's exposures, symptoms, and treatment, including ruling out other possible diagnoses, was sufficient for Board to find that claimant's contact dermatitis was work related, even though dermatologist was unable to identify particular agent that caused claimant's condition).[13]

Here, claimant needs to prove only that the fall arose out of a neutral risk of her employment. Because there is strong evidence that she was in the scope of her employment at the time, she needs to provide only slight evidence of that fact in order to meet the unitary work-connection test. The fact that her fall occurred in the course of employment, while she was engaged in an activity that was essential to performing her job—going to her work station—at the least supports an inference that it arose out of her employment unless there is some non-work-related (in this context, idiopathic) cause for it. Thus, the purpose for eliminating idiopathic causes is not to disprove other possible explanations of how the injury occurred, but, rather, to determine whether the fall—whose precise causation is by definition unknowable—arose out of the employment. ORS 656.266 does not deal with that question.

We conclude, thus, that ORS 656.266 does not affect the Supreme Court's decision in *Phil A. Livesley Co.*, whatever interpretation we give to it. We further conclude that the correct interpretation of that case is that a truly unexplained fall that occurs in the course of employment arises out of the employment as a matter of law. The remaining question is whether claimant has adequately excluded idiopathic factors

---

[13] Even if the Board is correct that the legislature, in adopting ORS 656.266, intended to overrule *Bradshaw,* the statute may not have that effect. In *Bradshaw,* the claimant's headaches began when her foot infection was at its worst and while her pre-existing diabetes remained out of control as a result of the infection. Those facts gave rise to an inference that the headaches were related to the compensable injury. The question on *de novo* review was whether we should adopt that inference. The physician's careful exclusion of all other possible explanations led us to do so despite our general reluctance to rely solely on chronological sequence to prove causation. Thus, we used exclusionary reasoning to help us decide what evidence to accept and what inferences to draw, not as a substitute for evidence.

so that her fall is truly unexplained. Because of its erroneous legal conclusion, the Board did not consider that issue. It must do so on remand.

Reversed and remanded for reconsideration.

**KISTLER, J.,** concurring.

I agree with the majority's result but not its reasoning. The majority holds that, under *Phil A. Livesley Co. v. Russ*, 296 Or 25, 672 P2d 337 (1983), a truly unexplained fall—one that is not attributable to idiopathic causes—arises out of work as a matter of law. In my view, the majority reads *Livesley* incorrectly. The court held in *Livesley* that a truly unexplained fall permits but does not require the Workers' Compensation Board to find that the resulting injury arises out of work. 296 Or at 32 (stating the holding).

In this case, the administrative law judge (ALJ) ruled that if a fall were unexplained, he necessarily had to find that the resulting injuries did not arise out of work. The Board adopted the ALJ's opinion and affirmed. That was error under either my or the majority's view of *Livesley*. Accordingly, I agree that this case should be remanded to permit the Board to apply the correct legal standard, although my view of the correct standard differs from the majority's.

According to the majority, the Supreme Court held in *Livesley* that a truly unexplained fall arises, as a matter of law, out of work and is compensable. The majority draws that conclusion from the fact that the court said "[w]e agree" after describing our reasoning in *Livesley*. At the time we decided *Livesley*, however, we reviewed workers' compensation cases *de novo*. To say that the Supreme Court understood that our holding in *Livesley* was based on a legal rather than a factual conclusion and that the court intended to adopt that legal conclusion both reads too much into the phrase, "[w]e agree," and incorrectly discounts the Supreme Court's explicit holding.

After prefacing its opinion with a summary of what we had said, the Supreme Court turned to the task of explaining and distinguishing its cases. *Livesley*, 296 Or at 30-31. The court then reasoned:

"In the present case, where idiopathic causes for an unexplained fall have been eliminated, the inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employment premises exposed the employe. *Larsen v. State Ind. Acc. Com.*, 135 Or 137, 140, 295 P 195 (1931).

"Petitioners contend that this result in unexplained fall cases relieves claimants of their burden of proving work-connection. We do not agree. The facts found by the referee and the Court of Appeals permit the reasonable inference that the fall was caused by the employment environment. Claimant has met his burden of eliminating idiopathic causes. There is no finding that any force or condition independent of the employment caused his fall. Claimant was engaged in the duties of his employment, on employer's premises, and exposed to the risks inherent in his work environment. In such a situation, where the 'course of employment' test is so fully met, where the cause-in-fact cannot be directly established, and where claimant has met his burden of eliminating idiopathic causes, we construe the Workers' Compensation Law to allow the inference that the unexplained fall 'arose out of' claimant's employment.

"Because the 'course of employment' elements are strong, because personal risks are eliminated, and because the 'arising' elements are incapable of direct determination, we hold that the administrative agency and the Court of Appeals could find that claimant has carried his burden of proof and that the unitary work-connection test is sufficiently satisfied to allow compensation for this unexplained fall."

*Livesley*, 296 Or at 32.

The majority's opinion cannot be reconciled with either the Supreme Court's holding or its reasoning. In *Livesley*, the Supreme Court explicitly "h[e]ld that the administrative agency and the Court of Appeals *could* find that claimant has carried his burden of proof" if, among other things, idiopathic causes for an unexplained fall are eliminated. 296 Or at 32 (emphasis added). It did not hold, as the majority does, that the Board must find that the claimant has carried his burden of proof in those circumstances. Were there any doubt about what the court held, the court's explanation eliminates it. The court explained that it "construe[d]

the Workers' Compensation Law *to allow the inference* that the unexplained fall 'arose out of' claimant's employment." *Id.* (emphasis added). The court did not construe the workers' compensation statutes to require that inference. Contrary to the majority's conclusion, *Livesley* permits but does not require the Board to find that a truly unexplained fall is sufficiently work-connected to be compensable.[1]

The remaining question is whether a later enacted statute, ORS 656.266, requires a different result. That statute provides:

> "The burden of proving that an injury or an occupational disease is compensable * * * is upon the worker. The worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred."

ORS 656.266. If all that *Livesley* required to establish that a claimant's injuries were compensable was proof that the fall was not due to idiopathic causes, the enactment of ORS 656.266 would call *Livesley*'s continued vitality into question. As the *Livesley* court explained, however, a claimant does not carry the burden of proving compensability merely by disproving that his or her injuries were due to idiopathic causes. Rather, in order to establish compensability, a claimant must also prove that he or she "was engaged in the duties of his employment, on employer's premises, and exposed to the risks inherent in his work environment." 296 Or at 32. The absence of idiopathic causes is only one factor for the Board to consider in determining whether "the unitary work-connection test is sufficiently satisfied to allow compensation for [an] unexplained fall." *Id.*

The ALJ and the Board, however, acted on the understanding that a truly unexplained fall is necessarily noncompensable. As explained above, that understanding is incorrect. Under *Livesley*, if the Board finds that the fall is

---

[1] The majority acknowledges some of what the Supreme Court said in *Livesley*, but it concludes that those statements merely create "a superficial ambiguity." 170 Or App at 509. In my view, there is nothing ambiguous about what the court held in *Livesley*.

truly unexplained, it can find that "the unitary work-connection test is sufficiently satisfied to allow compensation for the unexplained fall." Because the Board did not apply the correct legal standard, I would vacate its order and remand for it to apply that standard.