Argued and submitted April 12, 2000, affirmed February 28, 2001

In the Matter of the Compensation of
George A. MacDonald, Claimant.

**C.W. MCCALLEN CONSTRUCTION CO., INC.,**
and TIG Insurance Company;
*Petitioners,*

*v.*

George A. MACDONALD,
*Respondent.*

(98-04744; CA A106403)

19 P3d 977

Jerald P. Keene argued the cause and filed the brief for petitioners.

Ernest M. Jenks argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

In this Workers' Compensation case, C.W. McCallen Construction, Inc., (employer) seeks judicial review of an order of the Workers' Compensation Board (Board), in which the Board held that claimant's injury was not excluded from compensability under ORS 656.005(7)(b)(A). The issue is whether claimant was an "active participant" in an assault or combat. We review for errors of law, ORS 183.482(8), and affirm.

The material facts are undisputed. The Board adopted the administrative law judge's (ALJ) opinion and order:

"Claimant is [a] 52-year-old man. At times relevant to this proceeding, he was working for the employer as a dump-truck driver.

"March 11, 1998 was a rainy, muddy day. The employer's foreman arrived at an employer work site at about 6 or 6:30 a.m. The dump truck that claimant ordinarily drove was on the site. Claimant was not yet on duty, and the foreman chose to drive the truck and went back and forth on a side road. At some point the truck became mired in some mud and the foreman and apparently some other crew members used chains to hook a bulldozer to the truck.

"At approximately that time, claimant drove up the road to the site. He stopped on the road prior to reaching the dump-truck location and spoke to the foreman's son, who also worked for the employer. He asked the son why the truck was stuck.

"Claimant parked his vehicle and approached the foreman in a rapid and excited manner. He was apparently upset that the foreman had been using the truck and indicated that he needed the truck right away for a job. He questioned the foreman's authority to use the truck. Claimant was also concerned that the chaining of the truck to the bulldozer had been done improperly and would damage the truck. Claimant was also angry at the foreman because claimant believed the foreman had previously thrown away the truck's registration paper and insurance card. Claimant's language was abusive and he [made] use of a well-know[n] obscenity. The foreman apparently responded with

a certain amount of salty language as well. Claimant did not threaten to strike the foreman, nor did the foreman fear that claimant would do so. They did engage in a debate in close proximity to one another.

"At some point, the foreman grabbed claimant's jacket with both hands. There was a chain apparently suspended between posts behind the foreman's legs. Claimant pulled his right hand back in self-defense. The foreman pulled back on claimant with a motion to the left and both of their legs reached the chain and they went over it. They fell down together in the dirt, but claimant also rolled down a small slope.

"The foreman got up promptly. Claimant appeared surprised and fumbled quite a bit.

"When claimant stood up, he threatened to have the foreman arrested. Claimant got inside the truck to make a phone call to the employer. The foreman ordered him out of the truck, and claimant ran to an office and used the phone in there.

"\* \* \* \* \*

"Claimant reported to a hospital emergency room on the date of injury, where a doctor observed large linear abrasions across both popliteal surfaces. The doctor noted slight paracervical tenderness and minimal paralumbar tenderness. The doctor diagnosed bilateral popliteal abrasions, low-back pain exacerbation, and neck strain.

"Claimant later saw Dr. Gundry, who took him off work.

"On June 8, 1998 the insurer denied the claim on the grounds that claimant was an active participant in the altercation with the foreman."

The ALJ set aside employer's denial of compensability, finding that claimant was not an active participant in an assault or combat under ORS 656.005(7)(b)(A). The Board affirmed and adopted the ALJ's order.

On judicial review, employer assigns error to (1) the Board's conclusion that claimant was not an active participant in an assault or combat under ORS 656.005(7)(b)(A),[1]

---

[1] ORS 656.005(7) provides, in part:

"(b) 'Compensable injury' does not include:

and (2) the Board's conclusion that the assault or combat between claimant and the foreman was connected to claimant's job assignment.[2]

■ An injury is compensable if it "aris[es] out of and in the course of employment[.]"[3] ORS 656.005(7)(a). However, ORS 656.005(7)(b)(A) "excludes from compensability injuries from assaults (1) to an active participant in the assault *and* (2) when the assault is not connected to the job assignment and amounts to a deviation from customary duties. Unless both of those elements are met, the exclusion does not apply." *Redman Industries, Inc. v. Lang*, 326 Or 32, 38, 943 P2d 208 (1997) (emphasis in original).

Employer argues that *Kessen v. Boise Cascade Corp.*, 71 Or App 545, 693 P2d 52 (1984), in which we held that the claimant's injury was not compensable because he was an active participant in an assault or combat, is nearly identical to this case. We disagree. In *Kessen*, the claimant, also a truck driver, became very angry when his supervisor refused to give him the night off from work after attending a funeral for a coworker to be held earlier that afternoon. *Id.* at 547. The claimant stormed out of his supervisor's office and slammed the door behind him. The supervisor then called the claimant back and told him to "close the door right." *Id.* That further compounded the claimant's anger so that he began to "tell off" the supervisor by claiming that day-shift drivers were being favored and job assignments were being made unfairly. The claimant then directed his anger to a nearby coworker by "pointing and shaking his finger" at him, speaking in a loud voice and accusing him of being one of the favored drivers. *Id.* The claimant then "grabbed [his coworker's] wrapped and bandaged left arm, which had only recently been removed from a cast." *Id.* The coworker got up and "nailed claimant with a right to the jaw[.]" We found that

---

"(A) Injury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties[.]"

[2] Because we hold that claimant was not an active participant in an assault or combat, we need not address his second assignment of error.

[3] The parties do not dispute that claimant's injury arose out of and in the course of his employment.

the claimant was an active participant in the altercation because "he was the one who, because of his anger, vocal tirade and threatening gestures, actually *initiated the fight.*" *Id.* at 548 (emphasis added). Employer argues that the key language in which we should focus in *Kessen* is the claimant's "anger, vocal tirade and threatening gestures" because that is similar to what claimant did here. We disagree and instead find the key language of the opinion to be the italicized portion—*initiated the fight.*

■　　To be an active participant in an assault or combat requires more than just a heated exchange of words. There must either be a physical altercation initiated by the claimant—*see, e.g., Kessen*, 71 Or App 545 (claimant *grabbed* coworker's sore arm); *Donald Converse*, 50 Van Natta 1830 (1998) (claimant yelled and swore at assailant and *hit his safety glasses out of his hands* provoking assailant to assault the claimant)—or, if a claimant initiates a verbal altercation, it must incite or invite a physical response. *See, e.g., Irvington Transfer v. Jasenosky*, 116 Or App 635, 640, 842 P2d 454 (1992) (the claimant held not to be an active participant because he "did not have an opportunity to withdraw from the situation and he did not *voluntarily assume an active or aggressive role in the altercation.*" (emphasis added)); *Lang,* 326 Or at 42 (holding that claimant was not an active participant despite the fact that he angered assailant by making derogatory racial remarks to him because ORS 656.005(7)(b)(A) "require[s] more than that a claimant anger an assailant in such a way that the assailant later assaults the claimant").

■　　Here, although claimant was very upset when he approached the foreman and was yelling obscenities, the Board found that "claimant did not threaten to strike the foreman, nor *did the foreman fear that claimant would do so.*" (Emphasis added.) The Board further found that,

"[a]fter the foreman had used both his hands to grab claimant, claimant did likely bring back his right arm in an effort at self-defense. The foreman's action in grabbing claimant was quite threatening and aggressive. Claimant had no opportunity to withdraw from the physical contact. I cannot conclude that because claimant momentarily sought to act

in self-defense that he was an active participant in the combat."

Similar to *Jasenosky*, claimant had no opportunity to withdraw from the altercation once the foreman grabbed him and they fell over the chain. Nor does the record suggest that claimant, by his words, incited or invited the physical response by the foreman. Rather, the foreman himself testified that he grabbed claimant *"to make him 'wake up and smell the roses' "* and to *"shake [him] up."* (Emphasis added.)

Therefore, we hold that the Board did not err in holding that claimant was not an active participant in an assault or combat under ORS 656.005(7)(b)(A).

Affirmed.